## CLUETT, PEABODY & CO., Inc., v. WRIGHT.

### No. 2578.

Court of Customs and Patent Appeals.
Feb. 11, 1931.

GARRETT, Associate Judge, dissenting.

Roberts, Cushman & Woodberry, of Boston, Mass. (Charles D. Woodberry and Richard F. Walker, both of Boston, Mass., and John J. Darby, of Washington, D. C., of counsel), for appellant.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

From a decision of the Commissioner of Patents, dismissing a petition for cancellation of the registration of the trade-mark "Air–O," No. 162,625, dated December 19, 1922, issued to Denver M. Wright for belts for men's and women's wear, appellant has appealed to this court.

Petitioner's petition is grounded upon the contention that appellee was not entitled to the use of his mark on the date of his application for registration for the reason that at the time of the making of said application, the petitioner, appellant herein, was the owner and user of the trade-mark "Arrow," which was sometimes used in the printed form with the pictorial representation of an arrow, and sometimes used in the printed form alone, upon various articles of wearing apparel sold chiefly in men's furnishing stores.

The record shows that said petitioner is a New York corporation engaged in the manufacture and sale of collars and cuffs, outer shirts, including dress, négligé, and work shirts, pajamas, nightshirts, undershirts, underdrawers, union suits, handkerchiefs, neckties, fabric bathing belts, and other articles of dress and apparel; that its business was established in 1851; that its factories are located at Troy, Waterford, Schenectady, Rochester, Corinth, Nassau, Greenwich, all in New York, and at South Norwalk, Conn., Leominster, Mass., and Kitchener, Canada; that it maintains salesrooms and offices in twenty-three principal cities in this country; that its trade extends throughout this country and the principal foreign markets of the world, and that it is the largest collar and shirt manufacturer in the world; that the petitioner's said goods are sold and retailed in men's furnishings stores or haberdashery shops, in department stores, and in general clothing stores; that all of petitioner's said products are marketed under a trade-mark consisting of the word "Arrow" or of the pic-

torial representation of an arrow, or of said word "Arrow" associated with said pictorial representation of an arrow; that said mark has been continuously used by the petitioner and its predecessors in business since 1885 on shirts, collars, and cuffs; that its use was extended to handkerchiefs about April, 1909, and to nightshirts, pajamas, undershirts, underdrawers, and union suits about July, 1913, and to bathing belts in November, 1926, since which dates said uses have been continuous; that at the time of its expansion of business to fabric bathing belts and continuously since that time, the petitioner's said belts have been made of the regular stock of material from which certain of its collars have long been made and upon its regular machines used for cutting, folding, binding, and stitching collars; that the petitioner is the owner of twelve different registered trade-marks which registrations date from 1900 to 1925. The record further shows large expenditures of money for advertising and many other details of petitioner's business which we will not set out here. The petitioner also introduced into the record a long list of trade-mark registrations of various firms showing the line of goods or different articles of men's wearing apparel which were handled by such firms and covered by such registrations.

The earliest date of use claimed by appellee is in the year 1915.

The commissioner affirmed the decision of the acting examiner of interferences whose decision dismissed the petition for cancellation. The decision of the commissioner is to the effect that appellant did not use the "Arrow" trade-mark for belts until 1926 and that its right to extend its use of the "Arrow" mark to belts was lost due to laches since "petitioner practically acquiesced in the exclusive use of the mark 'Air–O' on belts from 1915 to 1926," and holds that it would be "inequitable" to now give appellant the exclusive use of the trade-mark "Arrow" on belts, citing Victor Stove Co. v. Hall-Neal Furnace Co., 58 App. D. C. 65, 24 F. (2d) 893, 374 O. G. 252, 18 T. M. R. 178; and France Milling Co. v. Washburn–Crosby Co. (C. C. A.) 7 F. (2d) 304.

Appellant contends that the registration of appellee's trade-mark was not warranted in law for the reason that the marks were identical (that is, identical in sound) and the goods of appellee and the goods of appellant at the time of appellee's registration were of the same descriptive properties; that since belts were in the same class, and closely related in their sale and use, with the articles

sold by appellant, appellant had the right to extend its business at any time to the sale of belts and use its "Arrow" trade-mark thereon; and that the commissioner erred in holding that appellant had lost such right by laches, inasmuch as the record was barren of any evidence whatever to the effect that appellant had any notice or knowledge of any facts which might be regarded as the basis for laches.

Counsel for appellant stated in argument that appellant first sought to register its "Arrow" trade-mark for cloth belts, which registration was refused on the theory that at that time the appellee owned a registered trademark for "Air-O" on men's and women's belts. He further stated that appellant did not appeal from the action of the Patent Office for the reason that appellant's counsel was of the opinion that the issue on such an appeal would involve only the similarity of the trade-marks and the descriptive properties of the goods of the respective parties; but that after registration had been refused, he then proceeded under section 13 of the trade-mark Act of 1905 (15 USCA § 93) for cancellation, in order that appellee's registered mark, when canceled would not be a bar to an application for registration of the trade-mark "Arrow" for cloth belts.

We think the commissioner erred in his finding:

"That the registrant's belt does not have the same descriptive properties as any of the articles to which the petitioner appropriated its mark up to the time the registrant entered the field is evident. One wishing to purchase collars, cuffs, shirts, etc., would never be deceived into purchasing the registrant's belt; nor would one wishing to purchase registrant's belts be deceived into purchasing any one of the petitioner's articles to which it appropriated its mark prior to 1926."

█ Men's and women's belts are of the same descriptive properties as most, if not all, of the articles of wearing apparel upon which appellant used its "Arrow" trade-mark prior to the earliest use by appellee of its registered mark. California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C. C. P. A. 1048; B. F. Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, 17 C. C. P. A. 1068; Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.(2d) 106, 17 C. C. P. A. 1103. The application for registration of appellee should have been refused since the word "Air–O" and the word "Arrow" are identical in sound, one word being a misspelling of the other. Appellee, at the time of making his application, was not the owner of the trade-mark for which registration was sought, since the same had already been appropriated, used, and registered for use for goods of the same descriptive properties. In our view it should have been clear to the commissioner that confusion would result from the concurrent use of the two marks and that the appellee's mark should not have been registered.

█ Upon this record, we think the commissioner erred in his holding that on account of laches appellant lost its right to extend the use of its "Arrow" trade-mark to belts. There is no such statement of facts shown herein as was involved in the two cited cases. For instance, in the France Milling Co. Case, supra, a Circuit Court of Appeals decision, the reference to laches on the part of Washburn is predicated upon Washburn's "acquiescence of so many years, while France was building up a non-competitive business," being such conduct as to bar Washburn from the right to an injunction in equity against the France Milling Company. The "acquiescence" referred to in the France Milling Co. Case, supra, no doubt contained the element of notice which is absent in the case at bar. See cases cited in Cluett, Peabody & Co. v. Hartogensis, 41 F.(2d) 94, 97, 17 C. C. P. A. 1166.

In Cluett, Peabody & Co. v. Hartogensis, supra, this court had substantially the same question under consideration, and it was there held that under the provisions of section 13 of the Trade-Mark Act of 1905, the aggrieved party having the right to bring his action "at any time," the mere passage of time would not be a bar to a prior use of a trade-mark being successful in a cancellation proceeding. We there held:

"We hold that the section provides that the proceeding may be brought at any time for the determination of these questions by one who deems himself injured by the registration of the mark, and that laches upon the part of the applicant is not a bar to the bringing of the proceeding provided for by the section."

However, further along in the decision we find the following:

"We think it appropriate to say in this connection that this opinion should not be construed as implying that affirmative acts of a prior owner and user of a trade-mark, relied upon by a registrant to his injury, would not be a bar to the right of cancellation in a proceeding under said section 13. We

go no further than to hold that in view of the express language of the section mere laches is not such a bar, and nothing more than laches is claimed in the case at bar."

We conclude, therefore, that appellant herein is within its statutory rights in bringing the action for cancellation and that the trade-mark "Air-O," No. 162,625, dated December 19, 1922, should be canceled.

The decision of the Commissioner of Patents is reversed.

Reversed.

GARRETT, Associate Judge (dissenting).

I am unable to agree with the majority that, under the facts of this case, appellee's "Air-O" trade-mark should be canceled.

Briefly, the facts are these:

Appellee began the use of his mark on leather belts worn upon the person in 1915, and has continuously so used it since, without complaint or question, so far as this record shows, until this cancellation proceeding was instituted sometime in 1927.

In 1922 appellee, having then used the mark for about seven years, secured its registration under the Trade-Mark Act of 1905 (15 USCA § 81 et seq.), "for use on men's and women's belts."

Prior to 1915 appellant had used the trade-mark "Arrow," combined with a representation of an arrow, on collars, cuffs, and outer shirts, and held five registrations of same. Whether these registrations were of the word "Arrow" alone, or of the word combined with the picture, the record does not show. Of eleven exhibits of the mark filed, as those used, nine of them have the word and picture combined. Subsequent to 1915 appellant extended its use of the mark to handkerchiefs, union suits, pajamas, nightshirts, and other articles of wearing apparel. In 1926 it extended its line of goods to bathing belts made of the same kind of fabrics that are used in the manufacture of some of its collars and, perhaps, some of its other goods. Its arrow mark was used upon these belts, and in 1927 it sought to register same for belt use. This application was denied on the ground that it conflicted with appellee's mark "Air-O" since the goods of both parties were belts. While its application was still pending, following an early preliminary adverse action by an examiner, appellant instituted the cancellation proceedings. It did not carry its application for registration beyond the examiner's final or third decision rendered after a second reconsideration.

It thus appears that appellant did not enter the belt field until eleven years after appellee had begun the use of the mark on belts and four years after appellee's registration.

It seems obvious that appellee has strong equities. There is no suggestion of the slightest bad faith upon his part; no contention that he was endeavoring to obtain any benefits from appellant's advertising or appropriate to his advantage any part of appellant's good will. He began and continued the use of his mark in good faith, and registered it. He has evidently built up an extensive business in interstate and foreign commerce. The stipulated record shows:

"* * * In most of the states of the Union and in Canada, Cuba, Hawaii, Holland, Egypt, Japan and Mexico, from which foreign countries registrant has received orders for belts under the trade name of 'Air-O.'"

His location is at St. Louis, Mo.; the locations of appellant are in the Eastern States and one in Canada. They were in no sense competitors and appellant has made no effort to show any actual injury to itself growing out of appellee's use of his mark over a period of many years. No confusion as to origin of the respective goods, or as to anything else, has been shown; no attempt has been made to show any.

It seems to me that the goods at issue in this cancellation proceeding, proper to be considered, are only those which were being dealt in by the respective parties in 1915 when appellee's use of his mark began. These were collars, cuffs, and outer shirts (of textile material) on the one hand and belts (of leather) on the other.

If we extend the matter up to the date of appellee's registration, December, 1922, we should add to appellant's goods, handkerchiefs, nightshirts, pajamas, undershirts, underdrawers, and union suits.

In the common and ordinary meaning of the phrase "of the same descriptive properties," I think it may be fairly said that they do not apply to the goods in which the respective parties to this case were dealing prior to 1926. There were no complaints by appellant of appellee's use of his mark or of his registration of same, of which latter it had at least constructive notice, until appellant had entered the bathing belt field and sought to register for that field.

But, even if it be conceded that the goods are of the same descriptive properties, by reason of the construction given by this court to the word "class," there remains the difference in the marks themselves.

I do not agree that they are so similar as that the statute should be held to justify or require the cancellation of appellee's mark.

Admittedly they do not have the same appearance. No person looking at them would be at all likely to think of any resemblance between them. Appellant's word, "Arrow," is most frequently used in connection, or in combination, with a representation of an arrow. It was being wholly so used in and prior to 1915. Indeed, this representation is quite as distinctive as the word itself. Appellee's word, "Air–O," is, according to the record, used alone, unaccompanied by any sign or symbol. Whether appellant's registrations have generally had the representation of the arrow as a part of the drawings does not appear. The registrations were not placed in the record. Why I do not know. As stated above, nine of the eleven exhibits purporting to give the mark as used show the picture or representation of an arrow. Appellee's registration is in the record and consists of the single word "Air–O."

It is only when the words are pronounced that any resemblance is noted and I do not believe that an order of cancellation should, in this case, be based upon sound alone.

The equities of appellee are too great here to admit of their being lightly brushed aside. He is not the newcomer in the belt field against whom doubt should be summarily resolved. He is the prior user of the mark for belts, and, as between the parties, is entitled, as I view it, to have any doubt resolved in his favor. So far as any public interest may be thought to be involved, there has been no confusion in the past and I know of no reason to presume that any will result from a continuance of the status quo.

This court has had occasion to say in several cases, in substance, that it would be useless to admit a mark to registration which a court of equity will not protect. In so saying we but followed what other courts have frequently said. The Supreme Court of the United States itself has declared the principle.

The converse of this proposition, within proper limits, is true, of course, and I think the principle is applicable here. That appellee has acquired property rights in the mark "Air–O", which, upon this record, a court of equity would protect, I do not for a moment doubt. He is, in my opinion, entitled to have his registration stand.