## CRYSTAL CORPORATION v. MANHATTAN CHEMICAL MFG. CO., Inc.

### Patent Appeal No. 3416.

Court of Customs and Patent Appeals.
March 4, 1935.

Edward S. Rogers, of New York City, Thomas L. Mead, Jr., of Washington, D. C., and Morris Hirsch, of New York City (William Walter Frankel and Franklin J. Foster, both of New York City, of counsel), for appellant.

Dante G. Galotta, of Washington, D. C. (John Paul Jones, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

In the United States Patent Office the appellant instituted an opposition proceeding directed against the registration by appellee of the trade-mark "T. Z. L. B" for talcum powder for use on the human skin and especially for use in the nursery.

Appellant's opposition was grounded upon its prior adoption, use, and registration of its trade-mark "Z. B. T." for talcum powder. It claimed it adopted the mark "Z. B. T." in 1922 and registered the same in 1926. The application for the 1926 registration recites that the appellant is the owner of the trade-mark "Crystal Z. B. T." registered October 2, 1923.

The record shows that appellant's expenditure in advertisement between 1923 and 1931 has amounted to nearly one-third of a million dollars, and that appellee does not advertise its product except in catalogues; that appellant's sales from 1923 to the date of taking the testimony amounted to nearly 10,000,000 cans; that the products of both parties are sold in the same places, to the same class of trade, and for the same purposes; that the round, long tin cans in which the powder is sold by both parties are made by the same manufacturer; and that in shape and size there is a close resemblance between the packages sold.

Appellee claims use of its mark since 1924. Prior to 1924, appellee was engaged in manufacturing and selling a number of brands of toilet powder under the trade-names "French Bouquet," "Rose and Violet," "Ming," "Darling Baby," and "Whit-mans." Its baby powder so used was composed of three basic ingredients. It is claimed by appellee that in 1924 it added an additional ingredient to its new baby powder which brought about the adoption of the four-letter trade-mark, each letter representing one of the basic ingredients.

The sole question presented here is whether or not there is sufficient similarity between the marks as to justify sustaining the opposition on the ground of probability of resulting confusion.

Appellant has shown that from 1922 it advertised its product as "Z. B. T." and that appellant and others used the term "Z. B. T." in correspondence without associating with it the word "Crystal." Appellant did not prove that prior to appellee's adoption of its mark "T. Z. L. B" it ever used in a trade-mark sense the letters "Z. B. T." by themselves. It did show, however, that in the use of the mark at the time appellee adopted its four-letter mark, it printed the term "Crystal" in very small and inconspicuous letters, and the letters "Z. B. T." in large, bold letters; that its product was referred to as "Z. B. T." It is also shown that in 1921 appellant's powder was sold in a paper can with metal top and bottom, similar in size to the can now sold, which contained the term "Crystal Z. B. T.," the word "Crystal" being printed in substantially the same sized letters as the capital letters "Z. B. T." It is then shown that between that date and the date of the registration of the "Z. B. T." mark in 1926, it gradually made the word "Crystal" smaller and less conspicuous and emphasized and made larger the letters "Z. B. T."

The Commissioner of Patents affirmed the decision of the Examiner of Interferences, which dismissed the notice of opposition, and it is from the decision of the Commissioner that appellant-opposer has appealed to this court.

Opposer argues the question here as if the issue were confined to the confusing similarity on identical goods of the letters "Z. B. T." and the letters "T. Z. L. B", printed with the same sized type. That is hardly the question presented since, as has been hereinbefore stated, appellee began its use of its mark prior to any trade-mark use by appellant of the "Z. B. T." letters unaccompanied by the term "Crystal." It seems to us that the question presented is: Is the mark "T. Z. L. B" so similar to the mark "Crystal Z. B. T.," as the latter was used when appellee adopted its mark, as is

hereinbefore shown, as to cause confusion, or is there reasonable doubt on the question of confusion?

It unquestionably appears that the letters "Z. B. T." constitute the dominant portion of appellant's mark. This conclusion is not only justified from an examination of the mark itself, but from the facts appearing of record which show that the letters "Z. B. T." were the chief feature of appellant's mark which identified its goods.

As to what has been held to be the prominent or dominant feature of certain marks, see Ex Parte Diamond Ink Co., 98 O. G. 1483, 1902 C. D. 45; Armour & Co. v. Louisville Provision Co. (C. C. A.) 283 F. 42; Great Bear Spring Co. v. Bear Lithia Springs Co., 45 App. D. C. 305; and Goodyear Tire & Rubber Co. v. C. Kenyon Co., Inc., 56 F.(2d) 670, 672, 19 C. C. P. A. (Patents) 1037. In the last cited case, this court said: "It is true that appellee's mark contains features in addition to the representation of wings that are dissimilar to the marks of appellant, but, after all, that representation is the most noticeable feature of the mark and seems to us to be the dominating feature." See, also, American Fruit Growers, Inc. v. Michigan Fruit Growers, Inc., 38 F.(2d) 696, 17 C. C. P. A. (Patents) 906, and Gillette v. Gillette Safety Razor Co., 65 F.(2d) 266, 20 C. C. P. A. (Patents) 1177.

The tribunals of the Patent Office recognized that the question presented was a close one. Appellee had not been using letters to indicate the origin of its goods, and for some reason (appellant urges that it was for the purpose of profiting by resulting confusion) appellee adopted all three letters which appellant had used but rearranged them and added one additional letter.

Appellee argues that to sustain appellant's contentions would amount to giving appellant a monopoly upon any lettered trade-mark for baby powder. We think the weight of the authorities strengthens the conclusion that appellant is entitled to a monopoly of a lettered trade-mark for baby powder to the extent that no newcomer has the right to adopt any lettered trade-mark which, by reason of similarity, would produce confusion. We think it is well known that it is more difficult to remember a series of arbitrarily arranged letters than it is to remember figures, syllables, words, or phrases. The difficulty of remembering such lettered marks makes confusion between such marks, when similar, more likely.

This court in the recent case of Helen Schy-Man-Ski & Sons v. S. S. S. Co., 73 F.(2d) 624, 625, 22 C. C. P. A. (Patents) ——, in considering the trade-marks "S'M'S" and "S.S.S.," reviewed several decisions involving arbitrarily arranged lettered trade-marks, discussed some of the cases relied upon here by appellee, and said: "It seems quite evident that the tribunals in the Patent Office came to the proper conclusion about this matter. It is apparent that if, in the same establishment, bottles of the S.S.S. preparation were placed side by side with goods of the same descriptive properties, as these are, in similarly shaped bottles marked 'S'M'S,' the opportunities for confusion are very great. Especially is this true among the illiterate and ignorant, and those who cannot be expected to exercise the same care and caution which might be exercised by those of another degree of information or intelligence. * * *".

It will not be necessary to again review those authorities here, but it may be gleaned from them that the courts have not hesitated to express disapproval of the adoption of a lettered mark if it appeared that confusion might result from similarity between such mark and other similar marks for goods of the same descriptive properties.

Many decisions, not necessary to cite here, in this court and in other courts, in cases quite similar in principle to the one at bar, have pointed out that those who adopt trade-marks for their merchandise should not enter a field where doubts can be reasonably entertained as to the likelihood of confusion, since the field from which to select valid trade-marks for use in distinguishing one's goods is a very broad one.

The peculiar nature of the marks involved here, the nature of the goods and the manner in which they are sold, the purposes for which the goods are used, the prices at which they are sold, the manner in which they are obviously most economically and properly packaged, and the fact that no great care in purchasing would ordinarily be observed all lead to the conclusion that confusion might result. Certainly there is sufficient doubt on the question that under the well-settled rule appellee should not be permitted the registration sought.

While the motives for adopting marks and the equities between the parties in-

volved in the use of such marks may be proper matters to have in mind in considering the question of their registrability, they are not matters which can be controlling where the question of confusion is the sole issue.

The decision of the Commissioner of Patents is reversed.

Reversed.