**GREAT WESTERN FINANCIAL CORPORATION, a corporation, and Great Western Savings & Loan Association, a corporation, Plaintiffs,**

v.

**GREAT WESTERN SAVINGS & LOAN ASSOCIATION OF OKLAHOMA CITY, a corporation, Defendant.**

Civ. No. 73–644–E.

United States District Court,
W. D. Oklahoma.

Dec. 30, 1975.

---

A. Paul Murrah, Jr., Robert D. Nelon and R. Brown Wallace of Andrews, Mosburg, Davis, Elam, Legg & Bixler, Oklahoma City, Okl., and Henry Gifford Hardy, San Francisco, Cal., for plaintiffs.

Clarence Black and William B. Rogers of Ames, Daugherty, Black, Ashabranner & Rogers, and William R. Laney, of Laney, Dougherty, Hessin & Fish, Oklahoma City, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EUBANKS, District Judge.

### FINDINGS OF FACT

1. Plaintiff Great Western Financial Corporation ("GW Financial") is a publicly held Delaware corporation, organized in 1955 as a savings and loan holding company. Its principal offices are in the State of California. Stock in GW Financial, held by approximately 25,000 shareholders, is traded on the New York and Pacific Coast Stock Exchanges. Its current assets exceed five billion dollars.

2. Plaintiff Great Western Savings & Loan Association ("GW Savings") is a state stock savings and loan association incorporated under the laws of the State of California. It is the second largest savings and loan association in the United States. It operates through ninety offices in the State of California.

3. GW Financial and GW Savings engage in the savings and loan business and related activities allowed to savings and loan holding companies and associations, including but not limited to escrow services, insurance, trusteeships and real estate development. As a unitary holding company GW Financial may engage in any legitimate business in the United States. Neither of the plaintiffs have

any plans to establish an operating facility in Oklahoma. Indeed, § 381.65 of Title 18 of the Oklahoma Statutes precludes plaintiffs from doing business in this state; however, the statutory restrictions operating against plaintiffs only preclude them from the establishment or agency in Oklahoma for the purpose of soliciting business here. This statute does not preclude plaintiffs from advertising in publications with national circulation, including Oklahoma, nor does it mean that an Oklahoman cannot do business with plaintiffs. As a matter of fact, as will be hereinafter demonstrated, plaintiffs do have investors who live in Oklahoma and stockholders also.

4. GW Savings and its predecessor have used the name "Great Western" continuously since 1924.

5. On October 21, 1969 GW Financial registered with the State of California, as service mark 557, in class 102, the service mark "GW" in a continuous branding iron form.

6. On October 3, 1969, GW Financial applied for registration of the same mark with the U.S. Patent Office. The mark was published by the Patent Office in March, 1973, and registration was granted on July 9, 1974, registration number 988,109 in class 102.

7. GW Financial and GW Savings have used the service mark "GW" in continuous branding iron form, by itself and together with the words "Great Western," continuously since September 26, 1969, in all their advertising, correspondence, statements, financial reports and communications with their savers and stockholders, and on all of GW Savings' passbooks. The use of the name "Great Western" and the "GW" service mark by GW Financial and GW Savings in connection with savings and loan services has extended throughout the United States, including the State of Oklahoma, through advertising and communications with savers and stockholders.

8. Between 1969 and 1973 GW Financial and GW Savings expended over $12 million, averaging nearly $2½ million per year, advertising and promoting its trade name "Great Western" and "GW" service mark.

9. GW Financial and GW Savings have advertised their name "Great Western" in Oklahoma prior to 1973 in the following publications:

Forbes Magazine
Journal of Accounting
Fortune Magazine
Christian Science Monitor
The Rotarian
Business Week
Barron's
National Observer
U. S. News & World Report
Los Angeles Times
National Geographic
Wall Street Journal
New York Times

GW Financial and GW Savings have advertised their "GW" service mark along with their name "Great Western" in Oklahoma prior to 1973 in the following publications:

Los Angeles Times
Fortune Magazine

10. In May, 1973, GW Savings had 601 savers in Oklahoma representing $3,461,000 in deposits. At any one time in recent years between 550 and 650 Oklahomans have been depositors in GW Savings. Turnover in accounts is frequent; in any given year in excess of 300 accounts of Oklahoma savers would be opened or closed. Prior to May, 1973, these Oklahoma depositors were frequently exposed to the name "Great Western" and the "GW" service mark of GW Financial and GW Savings through mail deposit and withdrawal forms, interest checks, quarterly and annual statements and newsletters, all of which bear the name and service mark. Between 1969 and 1973, prior to use of the name and mark by defendant, thousands of Oklahomans were thus exposed to the "Great Western" trade name and "GW" service mark used by plaintiffs.

11. In February, 1973, 172 Oklahomans, holding 2,708 shares, were stockholders in GW Financial. Oklahoma stockholders received prior to 1973, and continue to receive, communications

from GW Financial bearing the "Great Western" name and "GW" service mark on at least a quarterly basis. Annual reports, proxy statements and newsletters bearing the name and and mark were and are also sent to the stockholders.

12. Approximately 8% to 10% of the business of GW Savings representing deposits exceeding $335,000,000 is conducted with savers residing outside the State of California. This out-of-state business is an important asset to plaintiffs which they desire to maintain. Because of the uniformity of interest rates throughout the savings and loan industry, maintenance of these out-of-state accounts is dependent upon advertising and the association in the depositor's mind of the trade name and the "GW" service mark with plaintiffs.

13. Great Western Savings & Loan Association of Oklahoma City ("defendant") is a corporation organized and existing under the laws of the State of Oklahoma. It operates out of four branch offices in the metropolitan Oklahoma City area and has assets of slightly over seventy million dollars.

14. Defendant is engaged in the savings and loan business, providing savings accounts for approximately 13,000 savers, and making home loans, principally within the State of Oklahoma.

15. Defendant began business in southwest Oklahoma City in 1926 as Capital Hill Savings & Loan Association. On May 1, 1973, defendant changed its corporate name to Great Western Savings & Loan Association of Oklahoma City.

16. In March, 1973, after defendant decided to change the business name from "Capital Hill" to "Great Western," defendant's President decided to use a "GW" logo in continuous branding iron form. Actual use of this logo did not commence until May 15, 1973.

17. Prior to changing its name, defendant was aware, through its President, Keith Smith, of the existence of GW Savings. The possibility of confu-

sion of names between GW Savings and defendant was not considered by defendant. Only one name, "Great Western," was presented to defendant's board of directors for approval.

18. The "GW" logo was adopted by the President of defendant, Keith Smith, without action by the board of directors. No effort was made by defendant, through a search of trademark records or otherwise, to determine if the mark adopted by defendant was similar to the mark used by any other company using the name "Great Western." The defendant failed to exercise reasonable diligence in determining prior to actual use whether or not the "GW" logo could be used by it without infringing upon the rights of others.

19. Defendant was notified by letter from GW Savings dated May 21, 1973, that its change of name and adoption of a "GW" logo was considered by GW Savings to be an infringement of its trademark and trade name rights. Defendant responded through its counsel on May 30, 1973, that it did not believe that any confusion between GW Savings and defendant could arise, primarily because GW Savings could not become a licensed savings and loan association in Oklahoma. Defendant therefore continued to use and today continues to use the name Great Western and the "GW" logo, even though plaintiffs and defendant engage in the same business and compete in that business in Oklahoma.

20. After being notified of its alleged infringement by GW Savings, and conferring with its counsel, defendant declined to accept deposits from California residents in an effort to avoid confusion between GW Savings and defendant.

21. The use of the trade name and the "GW" mark, by plaintiffs and defendant in their respective advertising is virtually identical so that the likelihood of confusion between the two in the mind of the public exists. Defendant does not always use the words "of Oklahoma City" in its name and the occasional use of the suffix, almost always in

smaller letters, does not sufficiently differentiate defendant's name from plaintiffs' to the public. The service mark of plaintiffs and logo of defendant, although not identical, are deceptively similar and the likelihood of confusion is enhanced when their mutual use is in combination with identical trade names by competitors.

22. Actual confusion between plaintiffs and defendant has been shown to have occurred on at least two occasions when persons in California inquired of representatives of GW Savings whether plaintiffs had opened an office in Oklahoma City.

23. Unless defendant is enjoined from using the trade name "Great Western" and "GW" service mark the likelihood of confusion between plaintiffs and defendant will continue.

24. The testimony of defendant's witness, Barth, and his survey are entitled to little weight, if any, in proving or disproving any issue herein.

25. A large number of businesses in a wide variety of business endeavors use the name Great Western as a part of their trade or corporate name. Relatively few of these are financial institutions and even fewer are savings and loan associations. The principal officer of one of the other savings and loan associations admitted to knowledge of some confusion between it and plaintiffs'. In each case where plaintiffs considered a business using the name "Great Western" to be a competitor they have taken reasonable steps to notify each competitor of the infringement or inquired to determine if there was an infringement.

26. Although neither plaintiff nor defendant has established a secondary meaning in the name "Great Western" in Oklahoma, defendant's use of the name, after notice of infringement, was in derogation of plaintiffs' rights and at defendant's risk. The trade name "Great Western" is registerable as a service mark with the U. S. Patent Office and is accordingly subject to exclusive appropriation.

27. Plaintiffs and defendant engage in the same business and plaintiffs' competition with defendant in Oklahoma is sufficient to afford plaintiffs the right to appropriate and protect its trade name and service mark in Oklahoma.

28. As between plaintiff and defendant, plaintiffs are the senior users of the trade name Great Western and service mark "GW" in connection with savings and loan services in Oklahoma. The use by plaintiffs of the trade name and service mark has been in connection with more than minimal activity within this state as evidenced by the number of plaintiffs' savers and stockholders who reside in Oklahoma and the amount of savings deposits held by Oklahomans, the frequency and extent of the advertising of its name and mark in Oklahoma by plaintiffs, and the frequency of contact which plaintiffs have with their stockholders and savers in which the trade name and service mark are used.

29. The continued use by defendant of the "Great Western" trade name and "GW" service mark constitutes an infringement of plaintiffs' right to use of their name and service mark, which are protected by both common law trade name and trademark rights and by plaintiffs' federal trademark registration, and unless enjoined, will cause irreparable damage to plaintiffs.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this action under the trademark laws of the United States (Lanham Act, 15 U.S.C. § 1051 et seq.) and by reason of the diversity of the parties required by 28 U.S.C. § 1332. Venue is properly laid in this court under 28 U.S.C. § 1391.

2. The "GW" as distinctively used by plaintiff is capable of appropriation as a service mark. *Crystal Corporation v. Manhattan Chemical Mfg. Co.*, 75 F.2d 506, 22 CCPA, Patents, 1027 (1935); *OK Bus & Baggage Co. v. OK Transfer & Storage Co.*, 63 Okl. 311, 165 P. 136 (1916); Okl.Op.A.G. 68–105, 1 Okl.Op. A.G. 7 (1968); 3 Callman, *Unfair Compe-*

*tition Trademarks and Monopolies* § 73 (3d Ed. 1969).

3. Plaintiffs' federal registration of the "GW" service mark is valid and subsisting and establishes their statutory right to the exclusive use thereof in connection with savings and loan services. *Grant Food, Inc. v. Malone & Hyde, Inc.,* 248 PTCJ A–9 (C.C.P.A.1975); *Boston Pro. Hockey Assn. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (5th Cir. 1975); *New England Duplicating Co. v. Mendes,* 190 F.2d 415 (1st Cir. 1951); *Safeway Stores, Inc. v. Chickasha Cotton Oil Co.,* 180 F.Supp. 534 (W.D.Okl.1959); *HMH Publishing Co. v. Playboy Records,* 161 F.Supp. 540 (N.D.Ill.1958).

4. Defendant's use of its "GW" logo in connection with savings and loan services is an infringement of plaintiffs' right to enjoy the exclusive use and benefit of its registered service mark and constitutes a violation of the Lanham Act. 15 U.S.C. § 1114; *Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44 (5th Cir. 1975); *Grant Food, Inc. v. Malone & Hyde, Inc.,* 248 PTCJ A–9 (C.C.P.A. 1975); *Boston Pro. Hockey Assn. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (5th Cir. 1975); *Kyhos v. Perpetual Savings and Loan Assoc.,* 480 F.2d 204 (4th Cir. 1973); *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482 (5th Cir. 1971); *Beef/Eater Restaurants, Inc. v. James Burrough Ltd.,* 398 F.2d 637 (5th Cir. 1968); *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619 (5th Cir. 1963); *New England Duplicating Co. v. Mendes, supra; Vitamin Corp. of America v. American Home Products Corp.,* 166 F.2d 203, 35 C.C.P.A. 952 (1948); *Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co.,* 95 F.2d 711 (10th Cir. 1938); *Crystal Corp. v. Manhattan Chemical Mfg. Co.,* 75 F.2d 506, 22 CCPA, Patents, 1027 (1935); *Villager, Inc. v. Dial Shoe Co.,* 256 F.Supp. 694 (E.D.Pa.1966); *Safeway Stores, Inc. v. Chickasha Cotton Oil Co., supra; HMH Publishing Co. v. Playboy Records, Inc., supra; Telechron, Inc. v. Telicon Corp.,* 97 F.Supp. 131 (Del.1951).

5. Plaintiffs possess valuable rights arising from common law in the "GW" service mark and "Great Western" trade name from the prior use of both in Oklahoma and defendant's continued use of its "GW" logo and "Great Western" trade name in connection with savings and loan services is such as to make it likely that confusion will result as to cause the public erroneously to believe that defendant or its services are somehow related to plaintiffs through ownership, sponsorship or endorsement. *Value House v. Phillips Mercantile Co. (Value House),* 523 F.2d 424 (10th Cir. 1975); 26 A.L.R.3d 994; *Miller v. Barnes,* 380 P.2d 965 (Okl.1963); *Prudential Insurance Co. of America v. Prudential Life and Casualty Ins. Co.,* 377 P.2d 556 (Okl.1962); *Home Insulation Co. v. Home & Building Insulation Co.,* 175 Okl. 428, 52 P.2d 1065 (1936); *Flora v. Flora Shirt Co.,* 141 Okl. 58, 283 P. 1013 (1930); *Red Seal Refining Co. v. Red Seal Refining Co.,* 115 Okl. 63, 241 P. 762 (1925); *OK Bus & Baggage Co. v. OK Transfer & Storage,* 63 Okl. 311, 165 P. 136 (1916); Opinion 68–105, 1 Okl.Op. A.G. 7 (1968); 78 Okl.Stat. §§ 51–55.

6. The trade name "Great Western" is capable of appropriation and registration as a trade name and proof of secondary meaning is unnecessary in order for plaintiffs to enjoin defendant's infringement. *FS Services v. Custom Farm Services, Inc.,* 471 F.2d 671 (7th Cir. 1972); *Exquisite Form v. Exquisite Fabrics,* 378 F.Supp. 403 (E.D.N.Y.1974). In addition, the Lanham Act grants the same remedial treatment to trade names, whether registerable or not, as though they were registered, especially in matters of unfair competition. 15 U.S.C. §§ 1126(g), 1126(i), 1127. See also *Pagliero v. Wallace China,* 198 F.2d 339 (9th Cir. 1952); *In re Lyndale Farm,* 186 F.2d 723, 38 CCPA 825 (1951); *Stauffer v. Exley,* 184 F.2d 962 (9th Cir. 1950).

7. Plaintiffs activities in Oklahoma do not violate Title 18 Okl.Stat. § 381.65 and any prohibition against plaintiffs being licensed or established in Oklahoma does not prevent them from

obtaining the relief sought herein. *Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251, 255 (7th Cir. 1966); *Radio Shack Corp. v. Radio Shack, Inc.*, 180 F.2d 200 (7th Cir. 1950); *Scalise v. National Utility Service*, 120 F.2d 938, 940 (5th Cir. 1941); *General Film Co. v. General Film Co.*, 237 F. 64 (8th Cir. 1916); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 358 F.Supp. 1065, 1097 (D.C.Nev.1973); *Shatterproof Glass Corp. v. Buckmaster*, 256 So.2d 531 (Fla.App.1972).

■ 8. The use of the name "Great Western" by businesses in fields of endeavor unrelated to savings and loan services, and the few isolated instances of use of the name "Great Western" or a "GW" service mark by savings and loan associations or other financial institutions is not sufficient to constitute abandonment by plaintiffs of their "Great Western" trade name or their "GW" service mark; does not constitute acquiescence by plaintiffs in others infringing use thereof; and, does not estop plaintiffs, by laches or other equitable doctrine, from enforcing their rights in the "Great Western" trade name or "GW" service mark against defendant. *Giant Food Inc. v. Malone & Hyde, Inc.*, 522 F.2d 1386 (C.C.P.A.1975); *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614 (7th Cir. 1965); *United States Jaycees v. San Francisco Jr. Chamber of Commerce*, 354 F.Supp. 61, 73 (N.D.Cal. 1972); *James Burrough, Ltd. v. Lesher*, 309 F.Supp. 1154, 1160 (S.D.Ind.1969).

9. Plaintiffs are entitled to a judgment permanently enjoining defendant from using the words "Great Western" and the "GW" logo defendant is now using, or from using any colorable imitation or variation of the "Great Western" trade name and "GW" service mark.

10. Defendant's counterclaim for injunctive relief should be denied.

Counsel for plaintiff will prepare an appropriate judgment.

The Clerk of the Court is directed to mail a copy hereof to counsel of record.